**In re BURKE.**

No. 4950.

District Court, S. D. Georgia, Savannah Division.

July 26, 1943.

D. A. Bragg, of Millen, Ga., for debtor.

J. Henry Howard, of Sylvania, Ga., for creditors.

Harry D. Reed, of Columbia, S. C., for Federal Land Bank of Columbia.

LOVETT, District Judge.

On October 23, 1942, Mrs. Ottis E. Burke, a farmer, filed a petition in sufficient form for composition and extension of her debts under Chapter 8 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203 et seq., showing by her schedules debts of $3,593.28, all of which claimed to be secured, and the petition in due course was referred to the conciliation commissioner having jurisdiction.

The first meeting of creditors was held, at which time the debtor filed a proposal for composition and extension. It was rejected by the creditors. Thereafter she amended her petition and asked to be, and was, adjudicated a bankrupt under subsection s, § 75 of the Act. 11 U.S.C.A. § 203, sub. s.

Appraisers were appointed and reported. On December 1, 1942 the conciliation commissioner entered a stay and rental order and allowed the debtor to retain possession of her property under the supervision and control of the court. No unencumbered exemptions or "unencumbered interest or equity in exemptions" were sought to be or were set apart to her. Judicial proceedings were stayed and, based on the report of the appraisers, a reasonable annual rental was fixed by the commissioner at $998 payable "as shall hereafter be ordered", not apportioned, however, except as between personal and real property [1]. No rental has yet been deposited unless the proceeds of a crop

hereinafter mentioned may be treated as a partial payment.

At the time the petition was filed the debtor had a growing crop of peanuts. They were sold for $558.08. Out of this sum $113.90 was paid for expenses of harvesting, appraisers' compensation and fire insurance premium, leaving $444.18 remaining. No one has questioned the disbursements [2], the greater portion of which were incurred in the harvesting, and reasonable expenses for that purpose are recognized as proper charges on the fund. Adair v. Bank of America Ass'n, 303 U. S. 350, 58 S.Ct. 594, 82 L.Ed. 889. The controversy is over how the balance shall be applied, whether as a partial payment on rental or to lienholders holding security on the crops, mules that made it, lands, etc. The conciliation commissioner gave notice to creditors of a proposed order disbursing and allocating the funds to the lienholders. The Federal Farm Mortgage Corporation, holding a first mortgage or security deed on the farm on which the peanuts were grown, filed objections which were overruled by the conciliation commissioner.

The question now before this court is on the Mortgage Corporation's petition for review. It urges that the proceeds of the sale of the peanuts should not be taken as part payment of rental but should be regarded as an asset of the estate disbursable to the holders of liens on the crops entitled thereto, and that the annual rental of $998 when paid should be apportioned between the liens on the improved town lot, the farm and the personal property, the lienholders being different persons.

It can not be gainsaid that the bankruptcy power of Congress, like its other great powers, is subject to the Fifth Amendment, and that if the statute as here applied effects a substantial impairment of the mortgagees' security it offends the Constitution. Wright v. Vinton Branch of Mountain Trust Bank, 300 U. S. 440, 456, 457, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. Here it is proposed to take the proceeds of the sale of cer-

---

[1] The real estate consisted of a farm appraised at $5,400 and an improved lot in a small town at $1,000. The latter was the debtor's home; the farm had no home on it. The personal property was appraised at $2,030. The rental value of the real estate en bloc was fixed at $600, the personal property at $398.

[2] There was an objection urged to the payment of the appraisers' fees. The amount was only $10.

tain property of the debtor, peanuts, admittedly subject to valid liens of creditors, and use these proceeds not towards the discharge of the liens pro tanto but for an entirely different purpose, viz., as a part payment of the rental of debtor's lands and personal property. To permit this to be done will not only impair, it may destroy, the security of the lienholders, for rental goes to the extinguishment of taxes, upkeep of the property and to secured and unsecured creditors as their interests may appear (sub. s(2), whereas in the case of encumbered property when sold the lien is transferred to the proceeds. The statute expressly directs that where the debtor is permitted to retain possession under the supervision and control of the court, he can do so only "subject to all existing mortgages, liens, pledges or encumbrances" and that "all such existing mortgages, liens," etc., shall remain in full force and effect and the property covered (thereby) shall be subject to the payment of the claims of the secured creditors as their interests may appear. (sub. s(1). "The dominant purpose and effect of the act as amended is not to deprive creditors of their security to give it to debtors, but to remit to judicial discretion in each case whether the facts justify giving the debtor an equitable opportunity in an orderly way, to liquidate his indebtedness, provided always that the essential security of the creditor is not impaired, but preserved". Dallas Joint Stock Land Bank v. Davis, 5 Cir., 83 F.2d 322, 324. There is a very real distinction in origin and application between the "estate" of the debtor and the "rental" he may be required to pay as a condition of a stay of creditors' rights. Federal Land Bank v. Searcy, 5 Cir., 109 F.2d 418. To treat them alike, where rights of creditors intervene and differ, to apply the one to the prejudice of the other, to take the security of one creditor and give it to another or to allow the debtor to speculate with and possibly lose it and thus appropriate it to his own use by putting it finally beyond the reach of the lienholder, in my opinion, not only would offend the Constitution but would be violative of the express language of the statute itself.

■ For these reasons I conclude the proceeds of the sale of the peanuts should be distributed to the creditors holding liens on the growing crops as their interests may appear, and should not be applied as a part payment of the rental.

■ The remaining question relates to the proper disposition of the rental when and as paid. It has not yet been paid. It must be paid within one year of the date of the order staying proceedings. The commissioner has not yet determined either the date of its payment or the manner of its distribution. He should promptly determine the date when payment shall be made. Conceivably it may never be paid. If not paid, the commissioner will then consider what shall be done with debtor's estate. He can not retain possession and control and refuse to comply with the order for the payment of rental. If the rental is paid, the commissioner will then apply it, first, for the payment of taxes, secondly, for upkeep (repairs) of the property and, lastly, the balance shall be distributed among creditors, and applied on their claims, as their interests may appear. If their interests in the fund can not be equitably determined without an apportionment of the rental value as between the two separate parcels of land, with different liens on them, the apportionment should be made. Until the commissioner acts there is nothing to be reviewed.

■ It must be remembered in cases arising under the Agricultural Composition and Extension Act that the provision of subsection s granting stay, authorizing retention of possession by debtor on payment of rental and subject to the control of the court, is not to be treated as an end within itself. The primary purpose of the Act is the composition and extension of the debts of distressed farmers. The "function of subsection (s) is to provide temporary relief to those who might be able to adjust their difficulties but have failed in the preliminary proceeding. Its presence in the act has the additional effect of providing an inducement to secured creditors to accept a feasible plan when offered. Thus, its presence in the act is in aid of the composition provisions, resort to which is made a prerequisite to the relief afforded". Baxter v. Savings Bank of Utica, 5 Cir., 92 F.2d 404, 406. The debtor is expected to show some industry and resourcefulness when he asks to stay his creditors' hands and retain possession of his property for three years. If he were permitted to use his encumbered estate to pay his rental, if he were allowed to speculate with his creditors' security to their prejudice and possible loss, if he can use perishable personal

property subject to liens to finance his future operations (and thereby relieve himself from making any fresh or new contribution towards his re-habilitation), and at the same time furnish no equivalent security to the creditor whose security is consumed, the wholesome purposes of the law will be defeated. So construed the Act will serve to encourage the indolent and shiftless to seek only a moratorium, taking without risk a gamble for a windfall by unusually good crops and high prices, rather than to assist the thrifty but unfortunate who, except for the emergency of depression, could successfully operate their farms. The bankruptcy court is a shelter for a temporary shower; the debtor may remain there for three years out of the rain but he must support himself meanwhile. He can not stay there entirely at the expense of his creditors. The law does not furnish him an asylum endowed by his creditors for his maintenance and support for the period of stay.

The Commissioner will be governed by this opinion in the further proceedings before him.