In the Matter of BLAZON FLEXIBLE FLYER, INC., Debtor,

CITICORP BUSINESS CREDIT, INC., Appellant,

v.

BLAZON FLEXIBLE FLYER, INC., Appellee.

No. B 75–1116 A.

United States District Court, N. D. Ohio, E. D.

Feb. 17, 1976.

862

Lowell L. Garrett, Squire, Sanders & Dempsey, Cleveland, Ohio, for appellant.

Andrew J. Michaels, Brouse & McDowell Co., L.P.A., Akron, Ohio, for appellee.

## ORDER

CONTIE, District Judge.

The above captioned cause of action is before this Court on an appeal from the determination of Bankruptcy Court on December 10, 1975 which allowed appellee Blazon Flexible Flyer, Inc. (hereinafter Blazon) to continue operation of its business by using its accounts receivable and inventory which had previously been assigned to appellant Citicorp Business Credit, Inc. (hereinafter Citicorp) as security for a loan of approximately $1,340,000.00. On December 29, 1975, the Bankruptcy Court entered an Order modifying the previous Order of December 10, 1975, which provided a number of safeguards intended to protect the status of the interests of appellant Citicorp as a secured creditor.

Before this Court are two basic issues: (1) Does the Bankruptcy Court have the authority to issue an order authorizing the debtor in possession to continue the operation of its business when to do so would require utilization of assets and monies by the debtor which constitutes part of the security of the secured creditor? and (2) If so, do the facts as found by the Bankruptcy Court justify the use of such assets in the instant case?

Upon consideration and for the reasons stated below this Court is of the opinion that (1) the Bankruptcy Court had the authority to issue the Orders of December 10, 1975 and December 29, 1975; and (2) that there is substantial evidence to support the conclusion of the Bankruptcy Court that the interests of Citicorp have not been affected by said Orders.

Appellant asserts that the proceedings before the Bankruptcy Court support its three basic arguments, to wit:

(1) that the Bankruptcy Court is without authority to effectively destroy the perfected security interests of Citicorp;

(2) that the Order of the Bankruptcy Court is tantamount to an uncompensated taking of Citicorp's property in violation of the Fifth Amendment of the United States Constitution; and

(3) that even if the Bankruptcy Court had the power to authorize the spending of the proceeds of Citicorp's security, the decision of the Bankruptcy Court is not supported by the law, evidence or findings and that the conclusion of the Bankruptcy Court that Citicorp is adequately protected is erroneous.

Citicorp's first argument, although meritorious, begs the question before this Court. It is the argument of Citicorp that the Bankruptcy Court is without authority to effectively destroy the perfected security interests of Citicorp Business Credit, Inc. Title 11 U.S.C. § 706(1). The Supreme Court in *S.E.C. v. United States Realty and Improvement Company,* 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940), stated:

"Under Chapter XI only the rights of unsecured creditors of the debtor may be arranged and this without alteration of the status of any other classes of security holders or of subsidiaries." 310 U.S. 434, 452, 60 S.Ct. 1044, at 1051, 84 L.Ed. 1293.

However, it is the contention of Blazon that although the Orders of the Bankruptcy Court permit appellee Blazon to utilize the accounts receivable in question, such use does not affect the position of Citicorp as Citicorp has suffi-

cient other security to insure their interests.

■ The Court concludes that the law provides that the Bankruptcy Court cannot destroy or allow the destruction of the security interests of Citicorp. The application of this principle relates to the second and third arguments of Citicorp and is dealt with below.

■ It is Citicorp's second contention that the Order of the Bankruptcy Court is tantamount to an uncompensated taking of Citicorp's property in violation of the Fifth Amendment of the United States Constitution. Citicorp cites the case of *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) wherein the Supreme Court stated:

"The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment . . ."

Further, in the case of *In re Burke,* 51 F.Supp. 552 (S.D.Ga.1943), the Court therein said:

"It can not be gainsaid that the bankruptcy power of Congress, like its other great powers, is subject to the Fifth Amendment, and that if the statute as here applied effects a substantial impairment of the mortgagees' security it offends the Constitution." 51 F.Supp. 552, 553.

Further, the plaintiff Citicorp argues that the case of *Ginsberg v. Lindel,* 107 F.2d 721 (8th Cir. 1939) is applicable. Therein the court stated:

"Congress, in the exercise of the bankruptcy power, is bound by this principle [Fifth Amendment] and may not take a property right from one creditor and transfer it without compensation to another without violating the Fifth Amendment. . . . When the vested lien of the landlord is taken away by an order of the bankruptcy court and the property impressed with that lien is given to the general creditors of the bankrupt, the landlord is clearly deprived of a property right without just compensation. That is as true when the property right is a landlord's lien as when it is a mortgage." 107 F.2d 721, 726.

There is no question in this case but that Citicorp does in fact have a security interest in the accounts receivable. However, the Bankruptcy Court in its Findings of Fact and Law issued on January 7, 1976 found that as of December 10, 1975 Blazon had an inventory of finished goods, work in process and raw materials in the approximate amount of One million dollars ($1,000,000) and in addition had accounts receivable in the amount of Two million, seven hundred thousand dollars ($2,700,000). The contract in question submitted as part of Citicorp's case and marked as Exhibit No. 1 indicates in paragraph 9:

"Notwithstanding any termination, until all our obligations to you of any nature whatsoever shall have been fully paid and satisfied, you shall be entitled to retain your security in and title to all existing and future receivables and other collateral held by you hereinunder, and we shall continue to assign receivables to you and turn over all collections to you." Citicorp's Exhibit No. 1, page 2.

In other words, Citicorp is entitled to, and has a security interest in not only accounts receivable as of the time Blazon filed under Chapter XI, but also future or after acquired receivables.

It is the implicit finding of the Bankruptcy Court that the accounts receivable and inventory as they presently stand are adequate security for the debt incurred by Blazon from Citicorp. There is no doubt but that the facts as testified to at the hearings before the Bankruptcy Court and reviewed by this Court indicate that there will be a turnover process of accounts receivable and inventory. However, it was the determination of the Bankruptcy Court in its Orders of December 10, 1975 and December 29, 1975 that the secured interest of Citicorp

was not affected by this turnover.[1] Cf. *Handbook of the Law Under the Uniform Commercial Code*, White and Summers (West Publishing Co. 1972) § 24–5.

This Court notes that the cases cited by Citicorp deal with the taking of secured assets by a Bankruptcy Court and the utilization of such assets to pay unsecured creditors. The courts have determined this procedure to be violative of the Fifth Amendment. However, such a situation does not exist in the instant case, as the use of the secured assets are being directed towards the creation of new inventory and new accounts receivable upon which Citicorp receives and maintains a first and best lien. Thus, although there is some "affect" upon the assets secured by Citicorp, Citicorp's ability to collect on its interests is in no way jeopardized.

It appears that a basic issue in this case revolves around the definition of the term "affect" as it has been used by the courts. Webster defines this term in numerous ways, including "to have a detrimental influence on." *Websters Third New International Dictionary* (G. C. Merriam Co. 1965) p. 35. While it appears that there must be some technical "affect" on the security held by Citicorp if the assets comprising the accounts receivable are utilized[2] in the continued operation of the debtor's business, an application of the above definition would result in a determination that there would be no "affect" thereon as long as the accounts receivable and inventory were maintained at a level sufficiently in excess of the secured interest of Citicorp, the reason being that if such was done, there would be no "detrimental influence on" the security of Citicorp.

■ This Court must, as did the Bankruptcy Court, take into consideration the purpose of Chapter XI proceedings. The obvious import of said Chapter is to provide for an arrangement whereby a company has an opportunity to rehabilitate its business operations and become a profit making concern in spite of its financial difficulties. It appears that the Bankruptcy Court was aware of its role to attempt to preserve the debtor (while at all times protecting the interests of the secured creditor) under Chapter XI. The Bankruptcy Court in its Order of January 7, 1976 found that there is an outstanding secured debt to Citicorp of approximately $1,340,000 and that there is approximately $2,000,000 owed to unsecured creditors. The Court further found that the value of the assets of the company was approximately $5,731,000. It thus was the decision of the Bankruptcy Court that Blazon had sufficient assets over liabilities to possibly survive its financial problems.

■ It appears that a technical application of the law in the instant case wherein Citicorp holds a secured interest in not only accounts receivable but also on nearly every other asset of the debtor Blazon would enable said company to close down and necessitate liquidation of the assets of Blazon. It is the opinion of this Court that allowing such action to be taken by Citicorp under the facts of this case would result in a totally unconscionable and inequitable result. This was the decision of the Bankruptcy Court as well. Citicorp has due and owing it approximately $1,340,000. For this debt it has security in the amount of approximately $5,731,000. It thus appears that the security in the hands of Citicorp more than amply provides for

1. This Court notes that the Bankruptcy Court specifically found that Citicorp, besides being secured by the amount of the inventory stock and accounts receivable, was also secured by assets of the company worth approximately $5,731,450.28. The Bankruptcy Court further found that even reducing those assets by approximately 50% to consider a possible liquidation the assets still amounted to approximately $2,856,000.00. While this finding most

certainly cannot justify a Court's taking of a property right, it most certainly indicates that Citicorp is not in actual danger of losing that money which is secured by the accounts receivable, as well as other assets.

2. Just as there would be some "affect" upon a building if it were used in the continued operation of a business. Cf. *In re Tracy*, 194 F.Supp. 293 (N.D.Cal.1961).

the safeguards of said company's interests. The Bankruptcy Court has instituted a number of safeguards whereby financial information is transmitted both to it and to Citicorp on a regular basis. As long as it appears that Citicorp's interests in the $1,340,000 are more than adequately protected it is this Court's determination that the Chapter XI proceedings must enable a company to attempt its rehabilitation. As was stated in the case of *In re Colonial Realty Investment Co. v. Martin*, 516 F.2d 154 (1st Cir. 1975):

> "The policy of Chapter XII [equally applicable to Chapter XI] is rooted in society's interest in substituting arrangement for liquidation where possible and confers powers on the court to insure a fair chance to realize a viable arrangement. It seems to us, consistent with the general scheme of Chapter XII, that if, at this threshold stage, a determination of probable benefit (or at least, likely absence of injury) to secured creditors is made, subject to revision in light of changing circumstances, secured creditors are protected against serious irreversible harm while permitting arrangement explorations to go forward." 516 F.2d 154, 160.

This Court is of the opinion upon review of testimony and the Orders issued by the Bankruptcy Court that the actual interests of Citicorp in $1,340,000 are adequately protected and that the Bankruptcy Court has retained sufficient control and made a revision of its Orders upon short notice feasible and practical in light of any change in circumstances to the possible detriment of Citicorp. Therefore, Blazon, Inc. should be able, as found by the Bankruptcy Court, to avail itself of the Chapter XI proceedings for the primary benefit of not only Citicorp, but of all creditors interested therein.

This Court concludes therefore that as a matter of law, the Orders of the Bankruptcy Court do not affect the secured interests of Citicorp and that, therefore, there has been no taking of Citicorp's property interests in violation of the Fifth Amendment of the United States Constitution.

Citicorp makes a final argument that even if the Bankruptcy Court had the authority to issue the Orders in question, the facts of the instant case do not support its determination. Upon consideration of the discussion above, as well as of the record, exhibits and all the briefs of the parties, this Court is of the opinion that there are ample facts supporting the determination of the Bankruptcy Court and that therefore Citicorp's argument on this basis must fail.

For the reasons stated above, this Court determines that the Orders of the Bankruptcy Court must be and the same hereby are affirmed.

It is so ordered.