Re: ABLE SHEET METAL, INC., Plaintiff,

v.

FIRST BANK AND TRUST OF JONESBORO, Defendant.

Nos. J–C–80–131, JO 80–36, AP800072.

United States District Court, E. D. Arkansas, Jonesboro Division.

Dec. 7, 1981.

David E. Caywood, Memphis, Tenn., Warren E. Dupwe, Jonesboro, Ark., for plaintiff.

J. C. Deacon, Dennis Zolper, Jonesboro, Ark., Isaac Scott, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

HOWARD, District Judge.

This is an appeal from an order of the Bankruptcy Court, Eastern District of Arkansas, Jonesboro Division, dismissing the complaint of Able Sheet Metal, Inc. (Able), the Debtor, seeking the following relief against First Bank and Trust of Jonesboro (First Bank):

1. An injunction requiring First Bank to return monies it had received from account debtors of Able's prior to the filing of Able's Chapter 11 petition; and,

2. The recovery of three million dollars in damages for the "intentional, willful and unlawful conduct in interfering with Debtor's contractual relation with his customers, disparaging his business, trade, common name and good will and unlawful conversion of Debtor's Accounts Receivable."

The Court affirms the Bankruptcy Court's decision in denying Able's prayer for an order requiring First Bank to refund the monies received, but reverses the Bankruptcy Court's decision in dismissing Able's complaint seeking the recovery of damages for the alleged injury sustained as a consequence of First Bank's purported tortious conduct.

## FACTUAL BACKGROUND

On June 14, 1974, First Bank extended Able a loan in the sum of $250,000.00. The promissory note evidencing the indebtedness was made payable on demand or December 14, 1974. The note was secured by a security agreement and financing state-

ment covering Able's inventory, accounts receivable, furniture, fixtures and equipment used in Able's plumbing business.

From June 14, 1974, to January 31, 1980, Able made regular and periodic payments to First Bank on this indebtedness. As of January 31, 1980, the indebtedness had been reduced to $166,000.[1]

On January 12, 1980, First Bank notified approximately thirty-five of Able's account debtors of its security interest and requested them to make all checks and payments on their accounts to First Bank. Pursuant to this request, First Bank received the following sums: (a) $57,881.18 on February 15, 1980, (b) $54,419.01 prior to February 26, 1980, but applied to Able's indebtedness to First Bank on February 27, 1980, (c) $16,-719.03 was received after February 26, 1980.

Able filed its Chapter 11 petition and complaint for damages on February 26, 1980.

On February 27, 1980, the Bankruptcy Court entered the following order:

It is ordered that a preliminary hearing be held at 10:00 a. m., March 6, 1980, . . . on complaint of debtor-plaintiff for a temporary restraining order restraining defendant from collecting and converting accounts receivable belonging to debtor and requiring defendant to return said accounts receivable heretofore collected to debtor and on debtor's request for damages. . . .

On March 5, 1980, First Bank filed its motion to dismiss Able's damage action contending that Able had failed to state a claim against First Bank in which relief could be granted; and that the Bankruptcy Court lacked subject matter jurisdiction.

The following exchange took place on March 6, 1980, during the scheduled hearing on Able's request for preliminary relief:

JUDGE BAKER:

All right. Well, let me clear out some technical things and then we'll find out what we're going to do today. I have a

motion to dismiss from you, Mr. Zolper, in which you say I don't have jurisdiction to do anything. Do you want to press that motion?

MR. ZOLPER:

No, sir, only as to the complaint itself, not as to the temporary matter.

JUDGE BAKER:

Are you contending in other words, that I don't have jurisdiction to try in essence, I guess, what would be a tort action for damage of business reputation for three million dollars.

MR. ZOLPER:

Yes, sir, or in the alternative, as was asked in the motion, that you abstain from doing that and turn that over to State Court on the basis that really that tort action has nothing to do with the administration of the estate or would assist in the collection of the assets of the estate or anything of this nature, it would just consume the Bankruptcy Court's time in a matter that would not benefit the debtor in this particular situation, other than the fact, you know, the debtor thinks he has the chance to, I assume, collect three million dollars from us.

JUDGE BAKER:

That motion to dismiss is overruled. The Court has jurisdiction to. try all of those matters which are mentioned in the complaint of the debtor and I'm going to overrule the motion, to dismiss on all of those counts.

The following exchange also occurred:

JUDGE BAKER:

We are back on the record after a break and an in Chambers conference with counsel of record in the case of Able, Incorporated and I understand from the attorneys that we actually have three different factual situations as they relate to the Bank's handling of accounts receivable. One of those factual situations is that there are certain accounts receivable

---

1. As of December 31, 1979, Able's accounts receivable were designated at $432,735.98. However, the aggregate value of Able's collateral in which First Bank had a security interest was designated at approximately $878,000.00.

. which have been received by the Bank on or after the time of filing . . . let's put it this way, on or after February 26th, the date of filing. The Bank . . . the Court is entering an oral order and it will be followed by a written order directing the Bank to deposit into the debtor's account-checking account, all funds received by it on accounts receivable of the debtor that the bank received on or after February the 26th. There are two other factual situations. One of them is funds that were received by the Bank before February the 26th but not applied on the debtor's note with the bank until after February the 26th. . . .

. . . .

### JUDGE BAKER:

Now, then, gentlemen, the Court will receive briefs from the parties on how it should decide the issues involving two factually different situations that remain to be resolved. It's my intention to set the matter for a full and final hearing, with the exception of the tort claim, for the next time I am in Jonesboro.

On May 23, 1980, the Bankruptcy Court in its Memorandum Opinion and Order, found that Able had no property interest in that money received by First Bank prior to the filing of Able's petition on February 26, 1980—$57,881.50 on February 15th and $54,419.01 received prior to February 26, 1980, but not applied to Able's account until February 27th—and concluded that Able's "complaint must be found to be without merit and, consequently, dismissed." [2]

For reversal, Able contends that the Bankruptcy Court erred: (1) in dismissing Able's complaint seeking damages based upon the claim of tortious interference with its contractual relations and (2) holding that Able was not entitled to monies received by First Bank prior to the filing of Able's Chapter 11 petition.

### I.

### DISMISSAL OF ABLE'S TORT ACTION

On February 26, 1980, Able filed simultaneously its Chapter 11 petition and a three million dollar damage action against First Bank for the "intentional . . . interference with Debtor's contractual relations, disparagement of its business, trade, name, and good will and the unlawful conversion of Accounts Receivables."

On March 6, 1980, the Bankruptcy Court conducted a hearing on Able's request for preliminary relief—a temporary restraining order restraining First Bank from collecting and converting accounts receivable and requiring First Bank to return proceeds received from account debtors. During the course of the hearing, the Bankruptcy Court overruled First Bank's motion to dismiss Able's tort action, concluding "that the Bankruptcy Court had jurisdiction to consider Able's adversary action."

On May 23, 1980, without conducting a hearing on the merits of Able's tort action, the Bankruptcy Court entered its order finding that Able's complaint is "without merit and deserving of dismissal." [3] Able argues that the action of the Bankruptcy Court deprived it of procedural due process. First Bank, on the other hand, contends that the Bankruptcy Court was correct in dismissing Able's tort action because Able's entire complaint, the tort action as well as the prayer for return of proceeds received by First Bank from accounts receivable, is frivolous and deserves no further consideration.

The weakness in First Bank's argument is readily evident when reference is made to

---

2. At the beginning of the March 6th hearing, counsel for First Bank, in seeking clarification of the Bankruptcy Court's order of February 27th, inquired whether the hearing would also involve Able's complaint for damages. The Bankruptcy Judge replied:

"No, it says preliminary hearings, as you see it."

3. Whether the Bankruptcy Court intended to dismiss Able's tort action is not clear since the Bankruptcy Court's memorandum opinion and order contain no findings addressing this issue specifically. It is clear that the parties have construed the order as dismissing the tort action as well as Able's request for refund of proceeds received by First Bank from accounts receivable.

the record. It is clear from the record that the Bankruptcy Court overruled First Bank's motion to dismiss Able's complaint and the bankruptcy judge expressly stated to counsel for First Bank "... you need to make some sort of response to the complaint insofar as it relates to the tort aspect of it and file [for the record]. . . ."

Absent a showing that a party has received notice, either prior to a scheduled preliminary hearing or in some time frame which will afford a litigant an opportunity to prepare and present his case, the consolidation of an action on the merits with a proceeding for preliminary relief deprives a litigant of procedural due process. *Pughsley v. 3750 Lakeshore Drive Cooperative Building*, 463 F.2d 1055 (7th Cir. 1972). Given the circumstances existing in this case, Able was so denied procedural due process.

In *United States ex rel. Goldman v. Meredith*, 596 F.2d 1353 (8th Cir. 1979), the Court of Appeals emphasized that ordinarily it is improper to dispose of a case on the merits after a preliminary hearing, when there has been no formal consolidation of the preliminary hearing with a hearing on the merits, unless there is no material issue of fact that would justify a trial on the merits.

In *University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), the United States Supreme Court made the following relevant observation:

Should an expedited decision on the merits be appropriate, Rule 65(a)(2) of the Federal Rules of Civil Procedure provides a means of securing one. That rule permits a court to 'order the trial of the action on the merits to be advanced and consolidated with the hearing of the application.' Before such an order may issue, however, the courts have commonly required that 'the parties should normally receive clear and unambiguous notice [of the court's intent to consolidate the trial and the hearing] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.'

Neither the Bankruptcy Court's memorandum opinion nor its order establishes in any way that Able's tort action fails to create a material issue of fact which would justify a dismissal short of a trial on the merits. Furthermore, it is plain that the Bankruptcy Court neither ordered a trial on the merits to be advanced and consolidated with the preliminary hearing, nor gave notice to the parties of the court's intent to consolidate the hearing and the trial. Accordingly, the Bankruptcy Court's holding here is vacated and the case is remanded for further proceedings.

## II.

### PROCEEDS FROM ACCOUNTS RECEIVABLE

The thrust of Able's argument is that First Bank has received money which, in equity and for the success of its Chapter 11 Reorganization Plan, should be paid over to Able. The Bankruptcy Court considered the issue here in the context whether Able possessed a "legal or equitable interest in the money sought to be recovered at the time of the filing of the Chapter 11 petition." The Court is of the view that the issue should not be so narrowly formulated, when consideration is given to the purpose of a Chapter 11 Reorganization Program as discussed more fully hereafter. The Court is persuaded that the issues confronting the Bankruptcy Court were:

1. Does the Bankruptcy Court have the authority to require a secured creditor to pay over proceeds received from accounts receivable, prior to the filing of debtor's Chapter 11 petition, when the funds are necessary and essential to the continuity of the business operation of a debtor in possession?

2. Do the facts, as found by the Bankruptcy Court, justify the use of the assets sought?

It is settled that a Bankruptcy Court cannot destroy or permit the destruction of the security interest of a secured creditor in collateral. This concept is grounded on the theory that the bankruptcy power of Con-

gress is subject to the Fifth Amendment injunction against depriving an owner of property rights without just compensation—for example, taking property rights from one creditor and transferring them without just compensation to another creditor. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *Ginsberg v. Lindel,* 107 F.2d 721 (8th Cir. 1939); *Wright v. Union Central Insurance Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); *In re Blazon Flexible Flyer, Inc.,* 407 F.Supp. 861 (N.D.Ohio 1976).

The Court is of the view that Able's request for the proceeds received by First Bank prior to the filing of debtor's petition, but applied to the debt of Able either immediately before or after Able's petition, is not grounded on preferential treatment of one creditor, whether secured or unsecured, at the expense and detriment of First Bank. On the contrary, Able contends that the funds are essential and vital to the success of its Chapter 11 program which, if successful, will accrue to the benefit of all creditors, including First Bank. Moreover, Able contends that there are other assets which are more than adequate to secure the claim of First Bank, thus precluding the likelihood of any Fifth Amendment claim by First Bank. In support of this argument, Able cites *In re American Kitchens Foods, Inc.,* 9 Collier Bankruptcy Cases 537 (N.D. Me.1976). *See also: In re Blazon Flexible Flyer, Inc.,* supra.

In *American Kitchens,* the creditor initiated default proceedings immediately preceding the filing of debtor's Chapter 11 petition, impeding debtor's cash flow from accounts receivable. The debtor in possession lacked funds with which to pay the cost of overhead expenditures; without these services, debtor's business operations could not have continued, thus resulting in substantial losses. The debtor argued that the cash flow was useful and essential to the continuity of his business operation. Over the objection of the creditor, the Bankruptcy Court released funds recovered by the creditor before the commencement of the Chapter 11 proceedings. However, the Bankruptcy Court authorized such addition-

al collateral as protection against any diminution of the creditor's security interest.

First Bank argues that *American Kitchens* predates the Bankruptcy Reform Act of 1978 and, therefore, is not dispositive of the issue here.

It is plain that *American Kitchens* stands for the proposition that a Bankruptcy Court does have authority, under a Chapter 11 proceeding, to require a secured creditor to relinquish collateral and proceeds received from account debtors prior to the filing of a Chapter 11 petition, when these funds are necessary to assist a business to rehabilitate and become a profit-making venture and when such action will not deprive the secured creditor of property rights in collateral securing its claim in spite of debtor's financial difficulties. This position is in keeping with the overall purpose of a Chapter 11 proceeding. Indeed, once the business becomes viable, the concerned creditor benefits directly from the creation and accumulation of not only new accounts receivable, but new inventory as well.

While *American Kitchens* was decided before the Bankruptcy Reform Act of 1978 became operative, the Court is of the view that the Bankruptcy Reform Act of 1978 was designed to make the Bankruptcy Courts' power more comprehensive and broader than under prior legislation. It is clear that the Bankruptcy Reform Act of 1978 was designed to empower the Bankruptcy Courts to touch all of those aspects of a debtor's affairs that bear on his finances. This conclusion is inescapable in light of Title 28 U.S.C. § 1481 which grants Bankruptcy Courts powers of "a court of equity, law and admiralty"; and Title 11 U.S.C. § 105 which authorizes a Bankruptcy Court to issue any "order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code.

Rule 701 provides:

The rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to (1) recover money or property, other than a proceeding under Rule 220 or Rule 604, (2) determine the validity, priority, or extent of a lien or other interest in property, (3) sell proper-

ty free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) object to or revoke a discharge, (5) obtain an injunction, (6) obtain relief from a stay as provided in Rule 401 or 601, or (7) determine the dischargeability of a debt. Such a proceeding shall be known as an adversary proceeding.

■ The Court is persuaded that a Bankruptcy Court does have authority to require a creditor, as in the instant case, to refund or pay over proceeds received from accounts receivable prior to the filing of a debtor's Chapter 11 petition when such proceeds are necessary for the continuity of the business operation and have no unconstitutional impairment to the creditor's security interest where the debtor has sufficient other collateral to satisfy the indebtedness secured. See: *Wright v. Union Central Insurance Co.*, 311 U.S. 273, 278, 61 S.Ct. 196, 199, 85 L.Ed. 184 (1940); *In re Blazon Flexible Flyer, Inc.*, supra.

■ The Bankruptcy Court found in effect: (1) that Able had failed to establish that there was sufficient other collateral, upon a refund of the proceeds received by First Bank, to adequately secure First Bank's claim.[4]

In the course of the colloquy between counsel and the Bankruptcy Judge, during the hearing of March 6th, counsel for First Bank stated:

"I'd like to put in the record that there are substantial tax liens in excess of four hundred thousand dollars at this time and I think at least my client would like to make that part of the record."[5]

The Court is persuaded that this holding is not clearly erroneous inasmuch as there is substantial evidence to support the holding of the Bankruptcy Court.[6]

Accordingly, the Court concludes that the facts in this case do not rise to the level that would warrant invocation of the Bankruptcy Court's equitable powers requiring First Bank to pay over proceeds received prior to Able's Chapter 11 petition whether applied to Able's account before or after the filing date of the Chapter 11 petition.

Affirmed, as modified, in part and reversed in part and remanded for proceedings consistent with this opinion.

---

4. In addition, Able failed to demonstrate that proceeds sought were actually necessary for the preservation of the business operation.

5. In First Bank's memorandum brief to the Bankruptcy Court, First Bank contends that "in each of the two months preceding the filing" of Able's Chapter 11 petition, the Internal Revenue Service made tax levies on Able's property and Able failed to discharge these liens.

6. The Bankruptcy Court did not receive any evidence in a formal hearing. The court relied essentially upon statements made by counsel, in open court, relative to the nature of the evidence that would be offered to prove their respective contentions. Counsel agreed that the Bankruptcy Court was free to dispose of the issues upon the record as it stood. The Court concludes that the statements of counsel were intended by both the Bankruptcy Court and counsel to be regarded as stipulations as to the purported facts. The record is totally silent as to the actual needs of Able for funds for the operation of the business.