## STEIN v. HEMKER.

### In re EMBASSY CO.
### No. 13314.

Circuit Court of Appeals, Eighth Circuit.
Oct. 24, 1946.

See also, D.C., 58 F.Supp. 1004.

Roberts P. Elam, of St. Louis, Mo., for appellant.

Forrest Hemker, of St. Louis, Mo., pro se.

Leo J. Powers, of Chicago, Ill. (Roger S. Foster, Solicitor, and Theodore L. Thau, both of Philadelphia, Pa., Sp. Asst., Myer

Feldman, Atty., of Pittsburgh, Pa., Thomas B. Hart, Regional Administrator, of Philadelphia, Pa., and G. Gale Roberson, Atty., of Chicago, Ill., on the brief), for Securities and Exchange Commission.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from an order of the United States District Court for the Eastern District of Missouri allowing appellant, attorney for the debtor, The Embassy Company, and for the voting trustees of its stock, $2,000 for appellant's services in connection with the reorganization of the debtor under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Appellant asked an allowance of $12,000 as reasonable compensation for his services in the reorganization proceedings. 11 U. S.C.A. §§ 641–643. In this appeal he contends that the District Court in limiting his compensation to $2,000 was guilty of an abuse of discretion, induced by an error of law which resulted in failure of the District Court to take into account and properly evaluate all of the services of appellant which were beneficial in the administration of the estate and which contributed to the plan of reorganization confirmed by the court.

The Embassy Company is the creature of a reorganization of the Koplar Company which, at the time of its reorganization, owned the equity in an apartment building in St. Louis, Missouri. By the plan confirmed in the Koplar reorganization, Embassy took title to the apartment building; and issued its first mortgage income bonds maturing December 1, 1944, exchangeable bond for bond for the outstanding bonds of the Koplar Company, and its common stock, delivered to voting trustees to be held for the benefit of the holders of Embassy bonds and the general creditors and preferred stockholders of Koplar under an arrangement whereby, in the event of a default by Embassy in the payment of its bonds at maturity, the voting trustees were to deliver all of the Embassy stock to the holders of its bonds. Under this plan a default by Embassy in the payment of its bonds eliminated Koplar creditors and stockholders.

In October, 1944, Embassy was confronted with the maturity on December 1, 1944, of its authorized income bonds in the face amount of $460,900. Its principal asset was the apartment building. There were no general unsecured creditors, except possibly those holding claims for current operating expenses. Embassy was without funds with which to meet its maturing bond issue. Its default on December 1, 1944, was certain. In these circumstances the debtor and its voting trustees, three in number, employed the appellant, an attorney experienced in bankruptcy matters.

After investigating the question of the right of the debtor to relief under Chapter 10 of the Bankruptcy Act, in view of the fact that it was the creature of the reorganization of Koplar, and after a consideration of the debtor's financial situation and the obligations in respect to the stock of the debtor imposed upon the voting trustees by the Koplar reorganization, appellant advised the institution of the present proceeding. He devoted about five days to the consideration of the legal problems mentioned and to the preparation of the debtor's petition for reorganization.

The debtor's petition was duly approved by the District Court; the appellee Hemker, an attorney, was appointed trustee; the apartment building was appraised at $400,000; and thereafter the steps taken in the reorganization resulted in the confirmation of a plan under which the apartment building was sold for $475,000, a sum exceeding the amount required to pay the principal amount of debtor's bonds by $14,100.

In the course of the proceeding appellant as counsel for the voting trustees prepared and submitted to the District Court a petition asking for directions from the court to the voting trustees with reference to their duties relative to the distribution of the stock held by them under the Koplar reorganization. The debtor was in default at the time of the submission of the petition to the District Court which took the petition under advisement. Appellant devoted about three days to preparing to re-

sist and in resisting a motion filed by a bondholder to dismiss the proceeding. Appellant never appeared in court either in support of or in opposition to any of the three plans for reorganization eventually presented to the court. He did participate in conferences with the trustee appointed by the court, the voting trustees of Embassy, representatives of the Securities and Exchange Commission which intervened, and other interested parties concerning plans for the debtor's reorganization. But neither appellant nor other interested parties prepared and proposed a plan of reorganization within the time fixed by the court. Accordingly, the trustee prepared and submitted a conventional plan which in substance called for a repeat performance of the Koplar plan—a new corporation in place of Embassy and a new issue of capital stock and bonds in exchange for Embassy stock and bonds.

Although the evidence of appellant is to the contrary, the trustee testified that, from the outset and throughout the conferences mentioned above, appellant and the trustee agreed that a preferable reorganization should provide for the sale of the apartment building at a public sale. Both appellant and the trustee had negotiations to that end with possible purchasers. But since all parties were agreed that the sale should be at an upset price equal to the appraised value of the apartment and since no bidder on these terms appeared or could be found, such a plan was not immediately formulated. The proposed sale was, however, under consideration by the interested parties and was recommended by appellant in preference to the trustee's original plan and a third plan proposed by Koplar, a large bondholder, the terms of which do not require statement. And while these discussions were under way among the interested parties, appellant informed one Seltzer of the plans being considered and of the desire of all parties for a cash offer for the apartment at the appraised value of $400,000.

Seltzer was a client of another attorney who shared offices with appellant. Appellant told Seltzer of the conditions upon which the trustee would be willing to propose a plan providing for the sale of the debtor's property at a public sale at an upset price. Seltzer was advised that it would be necessary for any purchaser to give the trustee a guarantee to bid the appraised value of the property in order to procure the submission by the trustee of a plan proposing a sale.

Seltzer was interested, and after further discussion with appellant and consultation with his counsel, who subsequently represented him in the proceeding, entered into an agreement with the trustee, approved by the court, whereby Seltzer agreed to bid the appraised value of the property at a public sale and secured the performance of his agreement by deposit of $20,000 with the trustee. His contract was later amended to call for a bid of $420,000. The negotiations which culminated in Seltzer's contract to bid were conducted by the trustee with Seltzer and his counsel. On the execution of the contract the trustee submitted and the court approved a substituted plan of reorganization calling for a public sale of the debtor's property. Seltzer opened the bidding with the offer he had agreed to make. There were 53 bidders, and on November 7, 1945, the property was sold to Koplar, the highest bidder, for $475,000.

The trustee's report following the sale showed assets as of December 31, 1945, of $518,145.42; and liabilities of $507,341.-21, including debtor's bonds, principal and accrued interest to December 31, 1945, allowances for compensation to the trustee and others participating in the reorganization, and a reserve for income taxes. Claims for compensation and expenses amounting to $33,098.40 were reduced by the court to $18,147.38 and allowed in that amount. On June 10, 1946, the trustee had on hand $36,467.93 in cash with which to meet asserted claims of $9,218 for accrued interest on debtor's bonds to February 1, 1946 (the date of payment of the bonds), $12,000 claimed by appellant, and $17,500 reserve for income taxes, or total claims then pending of $38,718.

The error of law assigned by appellant is the alleged holding of the trial court that appellant's work in finding a bidder willing to contract to bid a fixed upset price

at a sale of the apartment building was not a service of counsel for the debtor compensable under applicable sections of Chapter 10 of the Bankruptcy Act. The judge did express some doubt on the question, holding that appellant was not entitled to compensation except for "legal service". But the conclusion was reached that the service of appellant was "of a legal nature" and that appellant was "entitled to compensation for it." Appellant did not ask compensation in any capacity other than as counsel for the debtor and its voting trustees, and expressly disclaimed any contract of employment in any other capacity by the trustee or any other party to the reorganization proceeding. This assignment is denied.

There remains for consideration appellant's contention that the compensation awarded him is so small in comparison with the value of his service to the debtor's estate and his contribution to the formulation of the plan for reorganization adopted as to show an abuse of discretion by the bankruptcy court. It is true, as appellant says, that a circuit court of appeals may modify or vacate an order fixing the compensation of counsel for the debtor in a reorganization proceeding. But on appeal from such an order the appellate court reviews a judgment within the broad discretion of the bankruptcy court. It does not try de novo the issue of reasonable compensation. The judgment of the court of bankruptcy will not be disturbed on appeal unless it clearly appears that there is no basis in the evidence for the conclusion reached, or that in reaching its decision the trial court proceeded upon an erroneous conclusion of law; or, to borrow language frequently employed by appellate courts, unless there appears "a clear abuse of discretion amounting to a manifest disregard of right and reason." On review the appellate court must give due regard to the trial court's superior knowledge concerning the details of the reorganization proceeding and the contribution of counsel in the conservation of the debtor's estate, the object of the proceeding before it, only attained by an economical administration avoiding the increased expense to the estate caused by the duplication of services and the allowance of generous rather than moderate fees to parties entitled to compensation. Cook v. Bowersock, 8 Cir., 122 F.2d 977, 981; Silver v. Scullin Steel Co., 8 Cir., 98 F.2d 503; Gochenour et al. v. Cleveland Terminals Bldg. Co., 6 Cir., 142 F.2d 991, 995; and Stark v. Woods Bros. Corp., 8 Cir., 109 F.2d 969.

We conclude that the record fails to show an abuse of discretion on the part of the bankruptcy court. Appellant kept no record of the time devoted by him to the reorganization proceeding. He estimated that from the beginning of his employment to the confirmation of the plan he was engaged for 20 days of six hours each. He offered no evidence by which the accuracy of his estimate could be tested. But it is apparent that much of appellant's time beyond that occupied in the preparation of the petition was spent in conference with the trustee and other interested parties concerning ways and means for accomplishing the result finally attained and in court observing but not participating in the hearings on suggested plans and administrative matters, and thus in services for which the trustee and other parties have also claimed and received compensation. Nor does the record compel the conclusion that appellant's production of an acceptable bidder at the sale of the apartment house added more than $100,000 to the debtor's estate. The most that can be said of appellant's efforts in finding a bidder is that it made the sale possible. As a result of the sale the holders of the debtor's bonds received par and, apparently, accrued interest for their bonds. They became the owners of capital stock of the debtors by virtue of the Koplar plan. But under the Koplar plan they were entitled to take the capital stock of the debtor and thus the apartment building, subject only to the lien of their bonds. About all that the Embassy plan accomplished was to establish the value in money of the rights the bondholders had at the beginning of the Embassy reorganization. Under the Koplar plan the bondholders were entitled to receive Embassy's assets. By the Embassy plan they have received the cash value of the Embassy assets with interest for the time occupied by Embassy's reorganization. In practical effect, the bondholders have paid for the expense of the reorganization

of which the chief beneficiaries have been those persons who received compensation for their contribution to the plan eventually confirmed.

Judgment affirmed.