In the Matter of AURORA CORD AND CABLE COMPANY, INC.,
Debtor-in-Possession.

Bankruptcy No. 80 B 00373.

United States Bankruptcy Court,
N. D. Illinois, E. D.

Jan. 30, 1980.

Richard L. Horwitz, Gary G. Piccony of Reid, Ochsenschlager, Murphy & Hupp, Aurora, Ill., for Aurora Cord and Cable Co., debtor-plaintiff.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., M. Carr Ferguson, D. Patrick Mullarkey, T. Kazan Ray, Attys. U. S. Dept. of Justice, Tax Div., Washington, D. C., for I. R. S., defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

Yorkville, Illinois is a small rural community located about seventy-five miles southwest of Chicago. The debtor, Aurora Cord and Cable Company, is its largest employer and is engaged almost entirely in defense-related work for the United States. The debtor is current on its income and employee withholding taxes but has refused to pay and disputes liability for excise taxes assessed in the 1971–1976 period.

This dispute is now in issue in a case pending in the United States District Court for the Northern District of Illinois under the caption *Aurora Cord and Cable Company v. United States of America,* No. 79–C–5399. On January 9, 1980, while negotiations for settlement of this tax suit were being conducted, the Internal Revenue Service levied on the cash and accounts receivable of the debtor. The Anti-Injunction Act, 28 U.S.C. section 2283, prevented the District Court from maintaining the status quo beyond the ten-day period allowed in a temporary restraining order.

Therefore, on January 11, 1980, the debtor filed a petition under Chapter 11 of Title 11 U.S.C. in order to invoke the statutory stay of creditors and lienholders provided by the automatic stay provision of the Bankruptcy Reform Act of 1978, 11 U.S.C. section 362. The Internal Revenue Service does not contest that it is subject to the automatic stay, but contends that the bankruptcy court lacks the power to order a turnover to the debtor of the seized funds and accounts receivable.

In support of its position, the IRS relies on *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). In *Phelps,* the IRS levied on assets of a debtor, which were in possession of an assignee for the benefit of creditors, prior to the debtor's filing a bankruptcy petition. On the application of the receiver in bankruptcy, subsequent to the filing of the petition, the bankruptcy judge ordered the assignee to turn over the assets to the estate.

The IRS appealed the order on the grounds that the bankruptcy court lacked jurisdiction to order a turnover of the funds. The receiver contended that the funds were in the possession of a nonadverse third party, the assignee for the benefit of creditors, and were therefore subject to the bankruptcy court's summary jurisdiction. The IRS maintained that its levy had given the IRS constructive possession of the funds, and therefore, the bankruptcy court lacked summary jurisdiction to order the funds turned over. The narrow issue before the Court was whether the levy was sufficient to bring the disputed funds within the constructive possession of the IRS for purposes of defeating the summary jurisdiction of the bankruptcy court.

The Court concluded that a pre-petition levy by the IRS gave it constructive possession of the funds, holding that property attached by IRS levy prior to filing a bankruptcy petition deprived the Bankruptcy Court of summary jurisdiction and that plenary jurisdiction to decide the tax-liability question was in the District Court. One of the purposes of the Bankruptcy Reform Act of 1978, and perhaps the principal reason for its enactment, was to eliminate the summary-plenary impediment to efficient administration of bankruptcy matters and to repeal the result in *Phelps.*

The IRS' present reliance on *Phelps* is misplaced. The instant case was filed under the Bankruptcy Reform Act of 1978, P.L. 95–598. Pursuant to that Act, the jurisdiction of the Bankruptcy Court has been radically expanded, and the distinction between summary and plenary jurisdiction has been abolished. 28 U.S.C. section 1471, Jurisdiction, as amended by the Bankruptcy Reform Act, provides, in pertinent part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

.　　.　　.　　.　　.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

This revision grants the Bankruptcy Courts pervasive jurisdiction over all civil proceedings arising in or related to cases under the act, effectively eliminating the summary-plenary dichotomy in jurisdiction. The "forum shopping and jurisdictional litigation that have plagued the bankruptcy system, the unfairness to defendants from 'jurisdiction by ambush', and the dissipation of assets and the expense associated with bifurcated jurisdiction will be eliminated by the jurisdiction proposed by this bill." H.Rept. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) at 49; S.Rept. 95–989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) at 18, 153–154, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6010. *See generally, The Bankruptcy Reform Act of 1978 —An Elevated Judiciary,* 28 DePaul L.Rev. 1007 (1979).

■ The Reform Act grants to the Bankruptcy Court, as an adjunct of the District Court, pervasive jurisdiction over the debtor and all of its property, including property in dispute. 11 U.S.C. section 105, 28 U.S.C. section 1471(a), (c), section 1651 (All Writs Act). The Senate Report, commenting on the statute as eventually enacted, states:

Subsection (b) grants to the U.S. district courts original, but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This broad grant of jurisdiction will enable the bankruptcy courts, which are created as adjuncts of the district court for the purpose of exercising the jurisdiction, to dispose of controversies that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in the State court or in the Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy court. The idea of possession and consent as bases for jurisdiction is eliminated. The adjunct bankruptcy courts will exercise in personam jurisdiction as well as in rem jurisdiction in order that they may handle everything that arises in a bankruptcy case.

S.Rept. 95–989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) at 153, U.S.Code Cong. & Admin.News, p. 5939. Thus, insofar as *Phelps* was concerned with the parameters of the bankruptcy court's summary jurisdiction prior to the recent amendments to Title 28, it has been legislatively overruled.

*In re Bush Gardens,* 1979 Stand.Fed.Tax Rep. (CCH) par. 9736 (D.C.N.J.1979), decided under the new act, misreads *Phelps. Phelps* did not rule that the property, subject to the Internal Revenue Service levy, was forever barred from inclusion in the debtor's estate. It held only that the subject property was not within the summary jurisdiction of the Bankruptcy Court, and the receiver's rights in the property would have to be determined under a plenary suit in the district court. *Phelps* at 330 (Syllabus).

Indeed, the balancing test resorted to by the court in *Bush Gardens,* par. 9736 at 88,732, appears to be identical to the summary—plenary jurisdictional test expressly rejected by Congress in the Reform Act. Although recognizing that the debtor had interests in the seized funds, the court concluded that the IRS had a more substantial, adverse interest therein. Since, pursuant to *Phelps,* the IRS had constructive possession, the property was not, in the court's opinion, "property of the estate". If this reasoning were accepted, arguably any property which the debtor did not have possession of, and in which another entity appeared to have a substantial interest, might not be considered property of the estate.

■ Clearly this court has jurisdiction to resolve the adverse claims to the property in the present case. The IRS has levied on funds belonging to the debtor in order to secure payment for a disputed tax liability. Thus the dispute is one "related to" the debtor's Chapter 11 proceedings. Furthermore, section 505 of the new Bankruptcy Code explicitly grants this court authority

to determine the legality of any tax imposed upon the debtor.[1]

■ Finally, the IRS contends that the debtor has no rights in the seized funds. This position is simply untenable. First, the debtor has, at a minimum, a right of redemption. Second, assuming the tax imposition to be valid, the debtor has a right to any amount in excess of the tax liability. Finally, and most importantly, the debtor will be entitled to all the funds if the tax assessment is determined to be invalid.

■ The turnover order in the instant case is particularly appropriate in light of the equitable power of this court (see, e. g. 11 U.S.C. § 105) and the spirit behind corporate reorganization. If the IRS is permitted to retain the debtor's assets, it is undisputed that the debtor will be forced into liquidation. The essence of Chapter 11, however, is to prevent the unnecessary dismemberment of viable corporations and to provide a maximum distribution to creditors who would be likely to receive nothing in the event of liquidation.

Allowing the property levied by Internal Revenue Service to be retained by them effectively decides that the debtor is barred from proposing a plan of reorganization and in satisfaction of creditors. It is clear from the legislative history of the Bankruptcy Reform Act that Congress was aware of situations where giving a secured or lien creditor an absolute right to its possessory interests might be seriously detrimental to the rehabilitation of the debtor. Therefore section 361 was enacted to provide the means by which conflicting rights in the debtor's property may be protected.[2]

■ Thus the bankruptcy court is given the authority to provide alternate means of protecting creditors' interests during the rehabilitation of the debtor while insuring that the creditor "receives in value essentially what he bargained for." H.Rept. No. 95–595 at p. 339, U.S.Code Cong. & Admin. News, p. 6295. Section 361 illustrates some forms of adequate protection, but it is by no means exhaustive or inclusive. *Id.* at 338.

The first alternative suggested by section 361 is periodic cash payments to the creditor to the extent that there will be a decrease in the value of that entity's interest in the property. S.Rept. 95–989 at p. 54. This alternative derives from *In re Bermec Corp.*, 445 F.2d 367 (2d Cir. 1971), where the court balanced the concern of the secured creditors for the depreciation of their security against Congress' mandate "to encourage attempts at corporate reorganization where there is a reasonable possibility of success." *Id.* at 369. The court found that the secured creditor was adequately protected, "so as approximately to preserve their status quo," *id.*, by the payment of the value of the economic depreciation on the security.

The second method is the provision of "an additional or replacement lien to the extent that such stay [or] use . . . results in a decrease in the value of such entity's interest in such property . . . ." 11 U.S.C. section 361(2). This alternative is derived in part from the view expressed in *Wright v. Union Central Life Ins. Co.*, 311

---

1. This provision underscores the irony of the IRS' position. While the validity of their tax claim is clearly subject to determination by this court, the funds seized to secure the contested tax claim are, according to the IRS, beyond the jurisdiction of this court.

2. 11 U.S.C., section 361 provides: When adequate protection is required under section 362, 363, or 364 of this title of an interest of an equity in property, such adequate protection may be provided by—

(1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), *cited in* S.Rept. No. 95–989 at p. 54, wherein the Court suggested that the secured creditor is entitled to protection of the value of its collateral and not necessarily its rights in that specific collateral.

The third alternative provides for "such other relief", 11 U.S.C. section 361(3), as the court may fashion, thus enabling the courts to fashion a remedy that will satisfy the concept of adequate protection.

Pursuant to Section 361 of the Bankruptcy Act, it is the responsibility of the Bankruptcy Court to satisfy the public policy favoring rehabilitation of distressed debtors while at the same time protecting the interests of creditors. It is not disputed that retention of the property levied will cause the demise of the debtor as a competitive commercial entity and have a devastating effect on the economy of the small community in which it is located.

 Moreover, such retention will mean that no other creditors' claims can be satisfied out of the property levied or its proceeds. It is well settled that a court of bankruptcy is a court of equity and has the powers of a court of equity. "There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). See also *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876 (1940); *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Accordingly, the Court has the duty of preserving and protecting whatever equities the debtor may have, not only for the rehabilitation purposes mentioned, but to protect the rights of all creditors in such a fund. *In re Garrett,* 203 F.Supp. 459 (N.D.Ala.1962).

Based on the foregoing, an order was entered January 23, 1980, providing, in part, that all levies of the IRS issued on any property belonging to Aurora Cord and Cable and on amounts due and owing Aurora Cord and Cable are lifted, and scheduling a hearing to provide alternative adequate protection to the Internal Revenue Service claim.[3] Upon consideration of the presentations of the parties in interest, and pursuant to the standards expressed herein and the foregoing discussion, the court hereby orders that:

1. Debtor shall open an escrow account with The Old Second National Bank of Aurora with provisions that withdrawals may be made only upon order of this court. Said escrow account may be an interest bearing passbook savings account, subject to regular court review whether said funds should be invested in other than a passbook savings account;

2. From all sums subject to the levies that are turned over to Aurora Cord and Cable, debtor shall deposit Twenty Thousand ($20,000.00) Dollars immediately into the escrow account at the Old Second National Bank;

3. Beginning April 1, 1980, debtor shall make monthly payments to the escrow account at The Old Second National Bank the minimum sum of Five Thousand ($5,000.00) Dollars, with additional amounts to be paid should the financial condition of the company warrant;

4. Debtor shall not replace the four salaried employees who recently terminated, at an anticipated annual savings of approximately Eighty-Seven Thousand ($87,000.00) Dollars;

5. Executives William Cheney and Rex Corbitt shall reduce their yearly salaries from Sixty-Two Thousand Four Hundred ($62,400.00) Dollars to Forty-Five Thousand

---

3. The order of January 23, 1980, provides, in pertinent part:

A hearing pursuant to 11 U.S.C. sec. 361 shall be held on January 30, 1980 at 2:00 p. m. for the purpose of determining whether and by what means adequate protection may be provided to the Internal Revenue Service by the

means of periodic payments by the debtor, the granting of additional or replacement liens or such other relief as will result in the realization by the Internal Revenue Service of the indubitable equivalent of that agency's interest.

*See* Order of January 23, 1980, attached hereto.

($45,000.00) Dollars; shall not receive interest on any loans they have with the corporation which in any event is stayed by the filing of Chapter 11, and shall reduce the rental payment due their partnership from the corporation for rental of the business premises from Four Thousand Twenty-Five ($4,025.00) Dollars to Three Thousand Four Hundred ($3,400.00) Dollars, an amount calculated to meet the mortgage and debt obligations on the building without any income accruing to the principals;

6. IRS shall be considered a secured creditor of the corporation on accounts receivables, inventory, machinery, and equipment considered to be items subject to the security; and the priority of secured creditors as between IRS and Yorkville National Bank to be determined at a later hearing;

7. Debtor is required to permit an agent or agents of the IRS to monitor the safeguards outlined herein and to make reasonable periodic inspection of the books and records;

8. Should there be a settlement for recovery from the three claims now pending against the United States Government on three contracts, said settlement shall be subject to approval of this court, and debtor shall deposit 50% of the net proceeds (less attorneys' fees and costs) in the escrow account at The Old Second National Bank;

9. Within ten (10) days from date hereof, debtor will consent to the entry of an order lifting the stay on the present proceedings in Federal District Court to determine the tax liability, and to allow said case to proceed; will agree to an accelerated discovery schedule together with a trial date no later than six (6) months from date hereof; and will advise the court of whether the Bankruptcy Court would be a more appropriate forum to hear the tax case;

10. To the extent that IRS's claim is ever deemed valid, and if it becomes an unsecured creditor of the corporation, that its priority as an unsecured creditor be raised from the sixth priority to the second priority;

11. That debtor shall fully implement the following statutory requirements:

(a) File semi-monthly reports of income received and expenses paid; with said first report to be filed on or before February 20, 1980 and to cover the period of time from the present up to and including February 15, 1980;

(b) File a financial statement each and every month with the first financial statement for the month of January due on or before February 20, 1980;

(c) The above-mentioned reports shall be filed with the court, and served on the IRS, Yorkville National Bank, chairman of the creditors' committee, and any other interested parties; and

12. Debtor is ordered to file with the court bi-weekly reports to show compliance with the provisions enumerated above.