CROSS ELECTRIC COMPANY, INC., Plaintiff,

v.

UNITED STATES of America (Appellant) et al., Defendants.

Civ. A. No. 7–80–01033.

United States District Court, W. D. Virginia, Roanoke Division.

Nov. 13, 1980.

M. Lanier Woodrum, Roanoke, Va., for plaintiff.

Thomas R. King, Jr., Asst. U. S. Atty., Olin R. Melchionna, Roanoke, Va., for defendants.

TURK, Chief Judge.

Defendants are appealing the order of the bankruptcy judge in a Chapter 11 bankruptcy proceeding. Plaintiff, Cross Electric Company, Inc. (Cross) is the Chapter 11 debtor. Cross has an account receivable due from defendant James D. Fralin, d/b/a J. H. Fralin & Sons (Fralin). The Internal Revenue Service (IRS) served a notice of levy on Fralin for the account receivable before the Chapter 11 proceeding was instituted by Cross. In the bankruptcy court, the judge held that the account receivable which was subjected to an IRS levy before the bankruptcy suit was commenced ought to be considered as property of the debtor's estate. Therefore, after ensuring that the interests of the IRS were adequately protected, the court ordered Fralin to turn over the funds to the debtor's estate. The order of the bankruptcy judge is affirmed.

Several times during 1978, 1979 and 1980 the IRS filed liens against Cross, pursuant to 26 U.S.C. § 6321, for unpaid withholding and Federal Insurance Contributions Act (FICA) taxes. By June 30, 1980, Cross owed the IRS $43,297.15. On August 21, 1980, the IRS used its power under 26 U.S.C. § 6331 to levy against the funds held by Fralin for Cross. Cross filed a Chapter 11 petition with the bankruptcy court on September 18, 1980. The exact amount that Fralin owes is in dispute. Fralin acknowledges that it owes $5,672.75 to Cross. According to Cross, the sum is closer to $10,000.00.

Cross states that without these funds it will not have sufficient liquid capital to pay the wages and operating costs for the continuation of its current projects. If these debts cannot be paid, Cross would be forced to abandon its current projects and go through the liquidation procedures of the Bankruptcy Code. Cross is unable to secure third party financing to get the necessary liquid capital because the IRS liens on all of Cross' assets preclude Cross from offering security for such financing. Cross urges this court to find that, at least to a limited extent, the fund is property of the estate and should be turned over pursuant to 11 U.S.C. § 542 so that it can be used by Cross for its own benefit.

The IRS claims that as of the date of the levy, it has full legal right to the funds. Although the IRS concedes that Cross still has some limited interest in the funds, it states that because it owns the fund it can't be forced to turn over the fund to Cross. Basically, the IRS wants this court to find that the IRS has a very strong interest in this property and that Cross has a very weak interest. Further, because Cross' interest is so weak, the property ought not to be considered property of the estate under 11 U.S.C. § 541.

Before the new Bankruptcy Code (Code) was enacted, there always arose in cases such as this, the issue of whether or not the bankruptcy court had jurisdiction to hear the suit. Congress has enacted 28 U.S.C. § 1471 which makes it clear that the bankruptcy court has jurisdiction to hear cases of this sort. The role of this court is to sit as an appellate court to review the decisions of the bankruptcy judge. Unless it appears that there was no basis in the evidence for the factual findings, or that there was an erroneous conclusion of law, the decisions of the bankruptcy judge will not be disturbed. *Stein v. Hemker (in re Embassy Co.)*, 157 F.2d 740 (8th Cir. 1946).

The purpose of Chapter 11 proceedings is to provide an arrangement in which a company has the opportunity to rehabilitate its business operations and to become a profit making company despite its past financial

difficulties. *Citicorp Business Credit, Inc. v. Blazon Flexible Flyer, Inc., (in re Blazon Flexible Flyer, Inc.)*, 407 F.Supp. 861 (N.D. Ohio 1976). There is a strong public policy which favors rehabilitation of failing concerns to make them viable contributors to society once again, rather than liquidating the companies quickly to turn over a reduced sum to all creditors. *In re Aurora Cord and Cable Company*, 2 B.R. 342, 5 B.C.D. 1310 (Bkrtcy.N.D.Ill.1980). Under the rehabilitative plan which is approved by the court, the debtor can, hopefully, pay off all of its creditors in full and continue to be an asset to the community.

■ To provide a business with an adequate start on its rehabilitative plan, it is necessary to include in the debtor's estate all property in which the debtor has an interest. With all of the property at hand, the trustee can make a coherent evaluation of the situation and logically make use of or dispose of all of the debtor's property. *H.R. Rep.No. 95–595*, 95th Cong., 1st Sess. 176 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The Code recognizes this point and provides in 11 U.S.C. §§ 541–2 for all property of the debtor to come into the estate. Section 541 of 11 U.S.C. is all embracing and requires that all legal or equitable interests, tangible or intangible property, or beneficial rights and interests that the debtor has in the property of another be included in the estate. 4 *Collier on Bankruptcy* ¶ 541.01 (15th ed. 1980). The underlying theory of 11 U.S.C. § 541(a)(1) is to bring into the estate *all* interests of the debtor in property as of the date the case is commenced. 4 *Collier on Bankruptcy* ¶ 541.06 (15th ed. 1980) (emphasis supplied). There is no balancing test involved. Those creditors who hold a significantly greater interest in a particular item cannot automatically have the item excluded from the estate if the debtor still retains some interest in it. *Troy Industrial Catering Service v. Michigan (in re Troy Industrial Catering Service)*, 2 B.R. 521, 525 (Bkrtcy.E.D.Mich. 1980).

■ Although 11 U.S.C. § 541 encompasses all property rights of the debtor, it does not provide for an expansion of the debtor's rights. The trustee will receive no more interest in the property than the debtor had at the commencement of the case. To the extent an interest is limited in the hands of the debtor, it is similarly limited in the hands of the trustee. 4 *Collier on Bankruptcy* ¶ 541.01 (15th ed. 1980).

To determine how to apply the provisions of 11 U.S.C. § 541 it is necessary, of course, to define what is "property of the estate." Although the answer to this question is guided by the federal standards of the Bankruptcy Code, we must look to the Internal Revenue Code in this case to determine the nature and extent of the debtor's rights. 4 *Collier on Bankruptcy* ¶ 541.01 (15th ed. 1980). Two sections of the Internal Revenue Code are particularly pertinent here. Under 26 U.S.C. § 6321, the IRS can attach a lien to all property and rights to property of the debtor. A levy on specific property is allowed pursuant to 26 U.S.C. § 6331 after the lien has attached. It is the effect of this levy that is at issue in this case.

The IRS claims that the levy transferred all property rights in the account receivable to the IRS. The authority which the IRS heavily relies on is *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975) (*Phelps*). *Phelps* dealt with the issue of the bankruptcy court's summary jurisdiction powers. The court held that when an assignee for the benefit of creditors is holding funds which belong to the creditors, but which have been subjected to an IRS levy before the bankruptcy case was commenced, the bankruptcy court lacks jurisdiction to summarily adjudicate the controversy. At 337, 95 S.Ct. at 1732, *Phelps* states, "The levy, therefore, gave the United States full legal right to the $38,000 levied upon as against the claim of the petitioner receiver." The IRS bases its case on this statement. The argument the IRS makes is that because a pre-bankruptcy levy transfers full legal right in the property to the United States, no property rights of significance are left for the debtor to include in his estate under 11 U.S.C. § 541.

Therefore, turnover of the fund is not warranted.

The sentence from *Phelps* quoted above which speaks of the transfer of full legal rights is followed in the very next paragraph by the last sentence of the case which states, "Here the assignee held as custodian for the United States, a bona fide adverse claimant." *Phelps* at 337, 95 S.Ct. at 1732. It is inconsistent for a party to hold full legal rights yet only be classified as an adverse claimant. The *Phelps* case dealt mainly with the jurisdictional powers of the bankruptcy court. At best, its statement regarding the transfer of full legal rights can be considered dicta.

■ That a levy does not transfer full legal rights in property to the IRS is clear from the cases which purport to follow and support *Phelps*. In the case of *In re Pittsburgh Penguins Partners*, 598 F.2d 1299 (3rd Cir. 1979) (*Pittsburgh Penguins*) the court specifically states that the crucial quote from *Phelps* is dicta and that the levy only gives the government a substantial adverse claim of ownership. *Pittsburgh Penguins* is, like *Phelps*, a case which dealt with the summary jurisdiction power of the bankruptcy court. It held that the bankruptcy court did not have the jurisdiction to summarily decide cases dealing with pre-bankruptcy petition levies. That *Phelps* did not authoritatively rule on post-levy ownership rights is clear from the statement of the *Pittsburgh Penguins* court at 1302 that "We need not decide, therefore, the further question whether the levy was effective to transfer full title to the assets to the United States." The reliance of the IRS on *Pittsburgh Penguins* is misplaced because that case dealt only with the jurisdictional question and expressly refused to decide the issue of the effect of the levy on ownership rights.

Another case which the IRS relies on is *In re Bush Gardens, Inc. v. United States*, 10 B.R. 506, 5 B.C.D. 1023 (D.N.J.1979) (*Bush*). In this case the IRS levied on the liquor license held by Bush. The levy was effective before the Chapter 11 bankruptcy proceeding had been commenced. The court held that property levied upon and seized by the United States prior to filing a bankruptcy petition is not property of the estate under 11 U.S.C. § 541. A significantly greater interest in the liquor license was held by the United States than by the debtor. Therefore, turnover under 11 U.S.C. § 542 was not required. The decision in *Bush* is faulty for two reasons. First, the court misstated the issue at 1025. The question is not whether the debtor's interests are such that the license itself is property of the estate. Under 11 U.S.C. § 541 the question ought to be if the debtor has any legal or equitable rights in the property at all. If so, those rights shall be transferred to the debtor's estate. Second, the *Bush* court states that because the IRS had a significantly greater interest in the liquor license, the estate was not entitled to the possession of the license. No balancing test is contemplated by 11 U.S.C. § 541. The underlying theory of 11 U.S.C. § 541 is to bring into the estate all interests of the debtor in property. 4 *Collier on Bankruptcy* ¶ 541.06 (15th ed. 1980). If the debtor has any rights to the property, that property ought to be transferred to the estate. The creditor can be adequately protected under 11 U.S.C. § 361 and 11 U.S.C. § 363.

That the debtor retains significant rights in the property can be seen from the Internal Revenue Code. The debtor is entitled to receive notice of the seizure of the property and notice of the impending sale of the property pursuant to 26 U.S.C. § 6335. Under 26 U.S.C. § 6337 the debtor may pay any sums due to the IRS before the sale and retain ownership of the property. Also, according to 26 U.S.C. § 6337, the debtor may redeem the property within 120 days of the sale. Pursuant to 26 U.S.C. § 6342 the debtor shall receive any surplus proceeds remaining after the cost of the sale and the sum due the IRS have been subtracted from the proceeds of the sale. In cases such as *Bush* and *In re Winfrey Structural Concrete Co. v. Internal Revenue Service*, 5 B.R. 389, 6 B.C.D. 695 (Bkrtcy.D. Colo.1980), which is a case similar to *Bush*, the courts recognized that the debtor still

retains these significant rights, yet chose to ignore the mandate of 11 U.S.C. § 541 that all of these rights be adequately represented in the debtor's estate.

The reliance of the IRS on *Phelps* and its progeny is misplaced for two reasons. First, *Phelps* cannot be read as stating that the levy transfers complete ownership rights to the IRS. The last sentence of that case which speaks of the IRS as an adverse claimant makes this point clear. No other cases flatly state that the levy absolutely transfers ownership. Phrases such as "the United States does acquire a substantial interest that *approaches* that of an owner" in *Bush* (emphasis supplied), or that the levy results in a *"virtual transfer"* to the government, in *United States v. Eiland*, 223 F.2d 118 (4th Cir. 1955) (emphasis supplied), show that the levy does not transfer full legal rights to the IRS.

In order to reach the decision in this case, it is unnecessary to find that *Phelps* is irrelevant to the issue before us. In *In¹ re Aurora Cord and Cable Company, Inc.*, 2 B.R. 342, 5 B.C.D. 1310 (Bkrtcy.N.D.Ill.1980) (*Aurora*), the court refused to use *Phelps* as a precedent because *Phelps* only dealt with the issue of the bankruptcy court's summary jurisdiction powers. While this court suspects that the court in *Aurora* held the better view of the usefulness of *Phelps*, the acceptance of *Phelps* at face value does not change the result in this case. Although *Phelps* stated that the levy transferred full legal rights in property, it is clear from the use of the term bona fide adverse claimant to describe the status of the United States that the court meant that the levy transferred significant legal rights to the United States.

The second reason for discounting the usefulness of *Phelps* is that the Internal Revenue Code specifically states that the debtor still retains significant rights in the property which may be of value or benefit to the estate. This court does not doubt that a pre-bankruptcy levy gives the IRS a superior interest in the account receivable. *United States v. Eiland*, 223 F.2d 118 (4th Cir. 1955). However, the debtor still re-

tains some interests in the property and these interests ought to be turned over to the debtor's estate pursuant to 11 U.S.C. §§ 541–2.

The Internal Revenue Code, by its own terms, also lends support to our holding. In 26 U.S.C. § 6337(a) the Internal Revenue Code speaks of the need for "further proceedings in connection with the levy." If the levy were to transfer all ownership rights, no further proceedings would be necessary to perfect the rights of the IRS. A levy is merely a step in the collection process. *Troy Industrial Catering Service v. Michigan (in re Troy Industrial Catering Service)*, 2 B.R. 521 (Bkrtcy.E.D.Mich.1980). In 26 U.S.C. §§ 6335–6, the Internal Revenue Code refers to the debtor after the levy as the "owner". The use of the word owner in these sections is inconsistent with the claim of the IRS that it is the owner of the property after the levy.

Once it has been determined that the debtor has interests in certain property, 11 U.S.C. § 542 comes into play. An entity which has possession, custody or control over property that the trustee may use, sell, or lease shall deliver that property to the trustee unless it is of inconsequential value or benefit to the estate. There are two other exceptions to the turnover provisions which are not applicable in this case. The IRS is an "entity" which is subject to the provisions of 11 U.S.C. § 542. *Bush* at 1024. The fact that the use of the account receivable could be of value or benefit to the estate is made clear by the complaint and all subsequent documents filed by Cross. Cross needs the liquid capital to complete its ongoing projects and successfully rehabilitate itself. Even if the debtor is not entitled to use the funds, but merely to retain title and the rights conferred by the Internal Revenue Code, these rights are of significant value and benefit to the estate and cannot be deemed to be inconsequential. *In re VanDeVeer*, 2 B.C.D. 1590 (W.D.Va. 1976).

The standard for whether or not the property can be turned over to the trustee for the trustee to use, sell, or lease, is

governed by 11 U.S.C. § 363. In a Chapter 11 proceeding the trustee has the authority to operate the business of the debtor. 2 *Collier on Bankruptcy* ¶ 363.04 (15th ed. 1980). If the account receivable is turned over to the estate it would become cash collateral under the definition supplied in 11 U.S.C. § 363(a). A trustee may not use cash collateral in the ordinary course of business without either getting the consent of all entities with an interest in the cash collateral, or getting court approval after all entities have received notice and a hearing. 11 U.S.C. § 363(c)(2). At this hearing the court may provide for the entity to receive adequate protection of its interests. That the use of the property may be authorized so long as adequate protection is provided can be seen in 2 *Collier on Bankruptcy* ¶ 361.01[1]:

> The most important message of the Code with respect to the treatment of entities with an interest in property of the estate is that their remedies may be suspended, even abrogated, their right of recourse to that collateral may be terminated as it is consumed in the business, but the value of their secured position as it existed at the commencement of the case is to be protected throughout the case when adequate protection is required.

According to 11 U.S.C. § 361, one way in which adequate protection can be provided is by allowing the IRS to hold additional liens or replacement liens to the extent that the use, sale, or lease of the property may destroy the interests of the IRS in the property. 11 U.S.C. § 361(2). The public policy involved in allowing the substitution of collateral is that giving the creditor absolute right to the benefit of his earlier bargain may impair the goal of Chapter 11 proceedings to rehabilitate the debtor. Therefore, alternate means of protection are allowable. *H.R.Rep.No. 95–595*, 95th Cong., 1st Sess. 339 (1978). In the bankruptcy court below, the judge held that the IRS was adequately protected after the turnover by the liens it already held on all of the presently held and after acquired assets of Cross.

A case similar to the one at bar arose in *Citicorp Business Credit, Inc. v. Blazon Flexible Flyer, Inc. (in re Blazon Flexible Flyer, Inc.),* 407 F.Supp. 861 (N.D.Ohio 1976) (*Blazon*). In that case the court allowed a Chapter 11 debtor to continue to use the accounts receivable and inventory which were under a perfected security interest held by Citicorp. The continued use was authorized even though it destroyed the affect of the security interest in the accounts receivable and inventory because other collateral was substituted which adequately protected Citicorp. Allowing Citicorp to maintain its stranglehold on the accounts receivable would require Blazon to close down and liquidate. Because the purpose of Chapter 11 proceedings is to rehabilitate the business, the court stated that the forced liquidation of Blazon would be an unconscionable and inequitable result. Other collateral was provided which would adequately protect Citicorp's interest so there was no taking of property without due process of law which would be inconsistent with the Fifth Amendment to the Constitution.

Several other cases support the decision in the case at bar. *In re Aurora Cord and Cable Company, Inc.,* 2 B.R. 342, 5 B.C.D. 1310 (Bkrtcy.N.D.Ill.1980) (*Aurora*) held that after a pre-bankruptcy IRS levy, the debtor still has rights in the property so that turnover is appropriate. The *Aurora* court dismissed the usefulness of *Phelps* as a precedent and severely criticized the *Bush* decision. Without the assets that were subject to the levy, the debtor may have been forced to liquidate. The court made certain that the IRS was adequately protected to the extent of its interest in the property.

*United States v. Smith (in re Smith),* 2 B.R. 417 (Bkrtcy.W.D.Mo.1979) (*Smith*) is a case dealing with a Chapter 13 wage earner plan. The court compared the situation of the debtor whose home had been subjected to a levy before the bankruptcy proceeding, with the situation of a mortgagor with an equity interest in the mortgaged property. Neither the levy nor the mortgage would

transfer away the full range of rights held by the owner. The *Smith* court did not determine the validity or extent of the IRS claim. Rather, it stayed the government's power to put itself in possession to allow the debtor to use his interests in the property to fashion an appropriate wage earner plan. If the debtor does come up with a successful rehabilitation plan, the government and the rest of the creditors will be paid in full.

In *Troy Industrial Catering Service v. Michigan (in re Troy Industrial Catering Service)*, 2 B.R. 521 (E.D.Mich.1980) (*Troy*) the court ordered a turnover of property in a Chapter 11 proceeding. Citing *Bennett v. Hunter*, 76 U.S. (9 Wall.) 326, 19 L.Ed. 672 (1869) the court stated a levy is merely a step in the collection process and does not in itself operate to transfer title to the government. The *Troy* court correctly and succinctly stated the issue in this case when it said at 525:

> [T]he question is not whether the government acquired an interest in the property, or the extent of the interest, but whether it is property which the debtor may use, sell, or lease and which has more than "inconsequential value or benefit" to the debtor to justify the court directing that the property be returned to the debtor.

According to the Internal Revenue Code, Cross still has a significant interest in the account receivable. Since *Phelps* recognized the status of the United States as an adverse claimant, saying that the debtor still has an interest in the property is not inconsistent with *Phelps*. The account receivable is of great value and benefit to the financial health of Cross under the rehabilitation plan. Therefore, the defendants will be required to turn over the funds to the estate. The interests of the IRS have been adequately protected. The order of the bankruptcy judge is affirmed.