In re INTERNATIONAL HORIZONS, INC., Debtor.

In re INTERNATIONAL HORIZONS (CURACAO), N. V., Debtor.

In re NORTH AMERICAN EXPORTS, INC., Debtor.

In re INTERNATIONAL HORIZONS, N. V., Debtor.

In re WORLD OF ENGLISH, N. V., Debtor.

INTERNATIONAL HORIZONS, INC., International Horizons (Curacao), N. V., North American Exports, Inc., International Horizons, N. V., and World of English, N. V., Plaintiffs,

v.

WESTERN PUBLISHING COMPANY, INC., Defendant.

Bankruptcy Nos. 81–01231A to 81–01234A and 81–02822A. Adv. No. 81–1631A.

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Dec. 9, 1981.

Dale M. Schwartz, Mary Grace Diehl, Troutman, Sanders, Lockerman & Ashmore and David G. Bisbee, Robert A. Parker, Bisbee & Parker, Atlanta, Ga., for plaintiffs.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This case is before the Court on the plaintiffs' motion for partial summary judgment on Counts One, Two, and Three of their complaint to recover property of the debtors in possession and for other relief. The plaintiffs ("IH") provide English language instruction programs in Japan and Brazil. Western Publishing Company, Inc. ("Western") produces and prints certain of IH's instructional materials. This production process necessitates the use of certain intermediate products such as negatives and color separation materials, which are in Western's possession. Western also has in its possession cassette tapes and other merchandise owned by IH, certain work in progress, raw materials, and other inventory manufactured by Western for use in IH's Disney's World of English books and Pro-English Learning System Books.

Count 1 of the plaintiffs' complaint seeks authority to use approximately 14,000 sets of Pro-English Learning System Books and an unknown number of sets of Disney's World of English materials, which are allegedly completed or near completion and which Western retains at its facilities in Poughkeepsie, New York. Count Two of IH's complaint seeks the turnover of certain intermediate products, including, but not limited to, films, negatives, plates, and color separation materials, for the debtors' use pursuant to 11 U.S.C. § 363. Count Three of IH's complaint seeks the turnover of cassette tapes and other items which have been shipped to Western's warehouse, plant, and customs bonded warehouse in Poughkeepsie, New York.

Western denies that the Pro-English and Disney's World of English materials, which are the subject of Count One of the plaintiffs' complaint, and the intermediate products, which are the subject of Count Two of the plaintiffs' complaint, are property of the estate within the meaning of 11 U.S.C. § 541, and consequently are not subject to turnover or use pursuant to 11 U.S.C. § 542 and § 363. Western admits that it has no interest in the cassette tapes and other items held by Western in Poughkeepsie, New York, which are the subject of Count Three of the plaintiffs' complaint, and Western has agreed to turn said property over to the debtors.

The debtors' current inventory of IH products will be substantially depleted by the time this Order is entered. The Court notes that without adequate inventory, the successful reorganization of the debtors will be severely hampered. Western also recognizes the debtors' immediate need for product.

IH seeks the turnover of the property which is the subject of Counts One and Two of its complaint under 11 U.S.C. § 541. The relevant part of § 541 states that the estate is comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case." IH bases its claim of having an interest in the Pro-English and Disney's World of English materials and the intermediate product on the following two theories: (1) These products are subject to IH copyrights, were produced from designs and copies supplied to Western by IH, are usable only to create IH products, and have been separately billed to and paid for by IH; and (2) Section 2–501 of the Uniform Commercial Code, which is in effect in Georgia, recognizes a special property interest in clearly identifiable goods to which a contract refers. The Uniform Commercial Code (U.C.C.) also recognizes the property interest created through identification of goods by allowing a buyer to obtain unshipped goods from the seller. (See *Ga.Code* § 109A–2–502.)

■ The question before this Court is whether the interest in property created by the identification of said property pursuant to a contract, as well as copyrights concerning certain intermediate product, create a sufficient property interest within the ambit of § 541 and § 542 of the Bankruptcy Code so as to require the turnover of property of the estate for the purpose of using said property pursuant to § 363 of the Bankruptcy Code. For the reasons that follow, the Court finds that IH has a sufficient property interest in the works in progress, finished goods, and intermediate materials currently in the possession of Western to order the turnover of said property to IH and to allow its use, subject to the provision of adequate protection to Western for its interest in said property.

■ The purpose of a Chapter 11 reorganization proceeding is to enable a business to rehabilitate itself and become a profitable going concern. *Citicorp Business Credit, Inc. v. Blazon Flexible Flyer, Inc.*, 407 F.Supp. 861 (N.D.Ohio 1976); *Cross Electric Company, Inc. v. United States of America*, 6 BCD 1348, 1349, 11 B.R. 998 (W.D.Va. 1980). In recognition of this purpose, Congress, in drafting the Bankruptcy Reform Act of 1978, provided for the use, sale or lease of property of the estate on condition that adequate protection is provided an entity that has an interest in such property concerning said use, sale, or lease.

■ The determination of what is a sufficient property interest to support a turnover of property and its use is not the result of a balancing test.

> "There is no balancing test involved. Those creditors who hold a significantly greater interest in a particular item cannot automatically have the item excluded from the estate if the debtor still retains some interest in it." *Cross Electric Company, Inc., supra*, at 1349, 11 B.R. at 1000.

In the *Cross Electric Company, Inc.* case, the Internal Revenue Service ("IRS") had levied on certain accounts receivable due Cross. The United States District Court there found a sufficient property interest in the debtor to support a turnover of said property to the estate. In the instant case, IH has a legally recognized interest in the finished goods, works in progress, and intermediate materials which are the subject of Counts One and Two of its complaint through the clear identification of said property. In view of the broad purpose of Chapter 11 of the Bankruptcy Code to afford a business the opportunity to rehabilitate itself, this interest provides the Court with a sufficient basis from which to order the turnover of said property to the estate pursuant to 11 U.S.C. § 542.

The defendant has cited the case of *Blackwelder Furnishings, Inc. v. Drexel-Heritage Furniture, Inc.*, 6 BCD 1337, 7 B.R. 328 (Bkrtcy.W.D.N.C.1980) in support

of its argument that were the Court to find that IH was entitled to a turnover of the subject property, then Western would be entitled to cash payment for said property as the only appropriate form of adequate protection. In *Blackwelder*, the Court ordered certain suppliers to deal with the debtor in order to enable the debtor to meet past delivery requirements and to enable it to continue in business. The Court in *Blackwelder* did *not* find that the debtor had a property interest in future business relations with the defendant furniture suppliers, and thus did not order the turnover of any specific property. However, the Court in the exercise of its equitable powers, entered a preliminary injunction in favor of the debtor requiring the defendant suppliers to do business with the debtor, provided it was on a cash basis. In the case *sub judice*, IH is not asking that Western continue to do business with it. Rather, IH requests that Western turn over property of the estate. Furthermore, IH has offered, pending a determination of the extent of Western's interest in the subject property, to provide it with adequate protection for its use of said property. *Blackwelder*, as its facts show, is not on point concerning the issue of providing adequate protection under § 363 of the Bankruptcy Code, which is the question this Court will now address.

11 U.S.C. § 363 provides for the use, sale or lease of property of the estate if adequate protection of an interest of an entity in such property is provided. In the case *sub judice*, IH has offered to provide adequate protection to Western by granting it a security interest in the IH printed products, intermediate products, and raw materials being turned over, although it has not admitted that Western has an interest in said property. The Court finds that the security interest in these goods and their proceeds provides Western with adequate protection of its interest in said goods.

There exists a dispute concerning whether an agreement between IH and Western has been consummated. The amount in dispute, approximately $700,000, arises out of alleged compliance with a purchase offer, which, if met, would result in a substantial discount or rebate from Western to IH. Until this suit is settled, the proceeds from the promissory notes, which will provide Western with adequate protection, will be placed in the Registry of this Court. This Court notes that it does not wish to place any undue burden on Western but believes that this is the only way to preserve the status quo and protect IH's position while providing Western with adequate protection.

Therefore, for the above-stated reasons, the Court orders that IH may sell the Pro-English and Disney's World of English product in the ordinary course of its business to its independent sales organizations ("ISO's") in Japan and may obtain Japanese promissory notes with maturities of not greater than sixty days. Western shall have a security interest in these Japanese promissory notes (in proportion to the amount of its sales price to the sales price of IH to the ISO's), as they are proceeds of the product turned over by Western to IH. Western shall be given physical possession of these promissory notes and shall present them for collection upon maturity, remitting the proceeds thereof, less costs of collection and remittance fees to the United States, for payment into the Registry of this Court. Western shall also have a security interest in the IH printed product, intermediate product and raw materials being turned over to IH. The Court orders further that when the property which is the subject of this Order is turned over by Western to IH, IH shall pay to Western, immediately upon receipt of reasonable invoices, Western's ordinary and necessary charges for delivering said property to IH.

IT IS SO ORDERED.