**In re FAIR DEPARTMENT STORE, INC., Debtor.**

**FAIR DEPARTMENT STORE, INC., Plaintiff,**

**v.**

**INTERNAL REVENUE SERVICE, Defendant.**

**Civ. A. No. 81–0397–H.**

United States District Court,
S.D. Alabama, S.D.

June 25, 1982.

Barry A. Friedman, Mobile, Ala., for plaintiff.

Edward J. Vulevich, Jr., Dept. of Justice, Mobile, Ala., Karl L. Kellar, Dept. of Justice, Tax Div., Civ. Trial Section, Southern Region, Washington, D.C., for defendant.

## ORDER

HAND, Chief Judge.

This is an appeal from the entry of an order by the United States Bankruptcy Court for the Southern District of Alabama requiring the Internal Revenue Service to turn over to the bankruptcy estate property seized by levy from the debtor prior to the filing of debtor's petition. The sole question presented by this appeal is whether seizure of debtor's property by the Internal Revenue Service prior to the filing of a

proceeding under Chapter 11 of the Bankruptcy Code prohibits the Bankruptcy Court from ordering the Internal Revenue Service to turn said seized property over to the debtor. The Court holds that the Bankruptcy Court was prohibited from ordering the turnover. The Bankruptcy Court is reversed.

## I. The Facts

On February 18, 1981, the Internal Revenue Service obtained a Writ of Entry enabling it to enter upon the two business locations of Fair Department Store, Inc., the debtor herein (hereinafter sometimes referred to as Fair), located in Prichard and Atmore, Alabama. The Internal Revenue Service levied on and seized the inventory and fixtures of the debtor.[1] A sale of the property seized was set for March 16, 1981.

Apparently to prevent this sale, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, on March 13, 1981, just three days before the sale was scheduled. The Service adjourned the sale and began taking steps to have the automatic stay lifted so the sale could be completed. Debtor filed an adversary proceeding seeking a turnover order under section 542 of the Bankruptcy Code. After a hearing the Bankruptcy Court issued an order requiring the Internal Revenue Service to turn over one of the two stores to the Bankruptcy Estate. The Court made clear its opinion that it had jurisdiction over the property and that the decision to allow the Service to proceed with the sale of the Atmore store was an act of discretion, designed to protect the interests of the United States.[2] The United States appeals from this order.

## II. Conclusions of Law

■ This case is governed by provisions of the Bankruptcy Code, Title 11, United States Code (1977) (hereinafter referred to as "the Code"). In general, the Code provides that a debtor may commence a case in bankruptcy by filing a petition, as occurred in this case. 11 U.S.C. Sec. 301. Commencement of a case results in the creation of the bankruptcy estate, which is comprised of all property, or legal or equitable interests in property, held by the debtor. 11 U.S.C. Sec. 541(a). The Bankruptcy Court acquires jurisdiction over this bankruptcy estate and may distribute it in accordance with the various provisions of the Code, and the Trustee has broad general powers over the property of the estate, subject to the supervision of the Bankruptcy Court. See 11 U.S.C. Sec. 363. In this case, it is the Government's position that the debtor's property effectively became property of the United States on February 18, 1981, when the levy was served and the property seized. Thus the fund was not property of the debtor when debtor filed its petition, and never became property properly included in the bankruptcy estate. Therefore the Bankruptcy Court had no jurisdiction over the property and could not order it turned over to the estate. The debtor, naturally, attempts to support the conclusion of the Bankruptcy Court.

### A. Seizure by Levy

Once Fair failed to pay its federal taxes and was assessed a lien in favor of the United States in the amount of those taxes arose upon all of its property or rights to property. Sections 6321 and 6322, Internal Revenue Code of 1954. Section 6331(a) of the Internal Revenue Code of 1954 authorized levy upon two broad, overlapping categories of property—(1) "all property and rights to property * * * belonging to [the taxpayer]" and (2) all property and rights to property "on which there is a lien." Both tangible and intangible property are subject to levy. Section 6331(b) of the Internal Revenue Code of 1954 makes this explicit by providing that the Government

---

1. There is no dispute that debtor was and is delinquent in paying over $15,000.00 in employment taxes.

2. The Court's order contained various other provisions designed to protect the United States, none of which need be considered, given the position of the United States that the property itself was outside the jurisdiction of the Bankruptcy Court.

may in the exercise of its levy power, "seize * * * property (whether real or personal, tangible or intangible)." The term includes "the power of distraint and seizure by any means." Internal Revenue Code of 1954, Sec. 6331(b). *See also Glass City Bank of Jeanette v. United States,* 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); *United States v. Eiland,* 223 F.2d 118 (4th Cir.1955). The Supreme Court has held that a levy transfers "full legal right" to the property levied upon as against the claim of the debtor. *Phelps v. United States,* 421 U.S. 330, 337, 95 S.Ct. 1728, 1732, 44 L.Ed.2d 201 (1975). Such levy is "an absolute appropriation in law," *United States v. Pittman,* 449 F.2d 623, 626 (7th Cir.1971), and thus is "tantamount to a transferral of ownership," *United States v. Sullivan,* 333 F.2d 100, 116 (3rd Cir.1964). Thus, once the levy was served and the property seized, in a very real sense, the property was transferred to the United States and ceased to belong to the Fair.[3]

B. Property of Bankruptcy Estate

■ As mentioned above, a debtor may commence a bankruptcy case by filing a petition under Section 301 of the Code. Once such petition is filed, the bankruptcy estate is created. It consists of, *inter alia,* "all legal or equitable interests of the debtor in property *as of the commencement of the case,*" 11 U.S.C. Sec. 541(a)(1) (emphasis supplied). The legislative history makes clear that the provision was not intended to expand the debtor's rights against others. As the House and Senate Reports reflect (H.Rep. 95–595, 95th Cong., 1st Sess., at 367: S.Rep. No. 95–989, 95th Cong., 2d Sess., at 82, U.S.Code Cong. & Admin.News 1978, p. 5787):

> Though this paragraph [Sec. 541(a)(1)] will include choses in action and claims by the debtor against others, *it is not intended* to expand the debtor's right against others more than they exist at the commencement of the case. For example if the debtor has a claim that is barred at the time of the limitations, then the trustee would not be able to pursue that claim, because he too would be barred. He could take no greater rights than the debtor himself had. * * * [Emphasis added.]

In short, Section 541 does not expand the debtor's interests in property. 4 *Collier on Bankruptcy* (15th ed.) para. 541.06. Once it was seized, the debtor had only a residual interest in the property in question (see note 2 above) since the levy and seizure had for all practical purposes transferred ownership of the property to the United States prior to the filing of the petition in bankruptcy. Therefore, the Bankruptcy Court had no jurisdiction to order turnover of the property to the debtor.

Several well-reasoned cases decided under the Code apply the reasoning set forth above. *See In re Avery Health Center, Inc.,* 47 A.F.T.R.2d 81–733, 8 B.R. 1016 (D.C. W.D.N.Y.1981); *In re Busch Gardens, Inc. v. United States,* 79–2 U.S.T.C., para. 9736 (N.J.1979); *In re Winfrey Structural Concrete Co.,* 5 B.R. 389 (Bkrtcy.D.Colo.1980);

---

**3.** It does not follow from the foregoing that a taxpayer has no interest with respect to the property levied upon. The Internal Revenue Code expressly provides that a taxpayer (the debtor herein) may redeem property which has been seized to satisfy his tax liability by paying "the amount due, together with the expenses of the proceeding, if any, to the Secretary." A right to redeem is an interest in property that passes from the debtor to the estate upon the filing of a petition for relief under the Bankruptcy Code. 4 *Collier on Bankruptcy* (15th ed.) § 541.07[3], pp. 541–29 to 541–30.

Of course, the debtor could institute a suit for a refund if there were some basis for challenging the merits of the amount of tax owed. Any right to a refund is property which passes to the estate when the petition is filed. See H.Rep. No. 95–595, *supra* at 367; *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Under the provisions of the new Bankruptcy Code, it is contemplated that the Bankruptcy Court may hear a suit for refund after the prerequisites of suit are met. See 11 U.S.C. Sec. 505(a)(2)(B).

In addition, the taxpayer has a right to receive any surplus proceeds remaining after the application thereof to the satisfaction of the tax liability for which the property was seized. Internal Revenue Code of 1954, Sec. 6342; See also Treasury Regulations on Procedure and Administration (1954 Code) Sec. 301.6342–1(b). This interest in any surplus proceeds is also an interest which passes to the estate.

*In re Parker GMC Truck Sales, Inc.,* 6 BCD 899, 12 B.R. 667 (Bkrtcy.S.D.Ind.1980).

A recent case to deal with this issue is *In Re: Birco Mining Company, Inc.,* 14 B.R. 1017 (D.C.N.D.Ala.1981). In that case Judge Pointer held that the bankruptcy court's order, directing payment to creditors out of a fund which had previously been levied upon by the United States, was due to be reversed:

> This court agrees with the ultimate conclusion advanced by the United States; namely, that the turnover order was incorrect in the facts of the case. Service of the notice of levy did effect a transfer to the United States of [the property in question], subject only to the special rights which [debtor] had, and indicated in footnote 2, *supra*. [The special rights referred to are the right of redemption, the right to surplus proceeds, and the right to sue for refund; see note 2 of this brief.] Those special rights passed to the Trustee upon commencement of the case in the Bankruptcy Court as "property of the estate" under 11 U.S.C. § 541. Those rights did not include, however, right to possession . . . . Accordingly, the order requiring the state court to pay to the Trustee the [property] was, after discovery of the facts concerning the levy, erroneous; and there was due to be treated as part of the debtor's estate not any part of the $7,500 itself but only those special rights regarding redemption, etc. *Id.* at 1019.

Some courts which have considered this issue in similar fact situations have held that, even though the property in question was levied upon prior to the bankruptcy petition, it would still be included in the bankruptcy estate. *See e.g., Cross Electric Company, Inc. v. United States,* 11 B.R. 998, 80–2 U.S.T.C. (D.C.W.D.Va.1980); *Aurora Cord and Cable Company, Inc. v. United States,* 5 BCD 1310, 2 B.R. 342 (Bkrtcy.N.D.Ill.1980).[4] However, this Court declines to follow these cases because the reasoning is

faulty in at least two respects. First, the cases state that *Phelps* is not controlling since it was decided under the Bankruptcy Act rather than the new Code. True, *Phelps* was concerned with the question of whether the bankruptcy court had jurisdiction under the old Act. To that extent it is not controlling in cases to be decided under the Code. However, in order to decide *Phelps* it was necessary for the Supreme Court to determine the legal effect of a levy served by the Internal Revenue Service. The resulting determination that the levy transferred "full legal right" to the property was crucial to the case and cannot be considered *dicta,* as *Aurora Cord and Cable, supra,* suggest. There is certainly nothing under the Bankruptcy Code which in any way changes the legal effect of a levy secured under Section 6331 of the Internal Revenue Code.

A second and more basic flaw is found in both *Cross Electric* and *Aurora Cord and Cable.* Both cases state that the debtor retains certain rights in the property levied upon, a proposition with which the United States willingly concurs. However, from this premise the cases go on to state that, since the debtor retains some residual interest in the property, the property itself must be included in the estate. This non sequitur ignores the clear import of the statute: only such rights to the property as the debtor retains may be included in the bankruptcy estate. The Government is in no way arguing for a so-called balancing test, as the Court in *Cross* seems to state. Rather, the Government asserts that it has full right to the property, subject only to the residual rights specified above in note 2. In short, the mere fact that the debtor retains some residual rights in the property levied upon does not mean that the property itself shall be included in the bankruptcy estate.

III. Order

The levy served by the United States effectively transferred ownership of the property to the United States. The filing

---

**4.** *Cross Electric* is currently on appeal to the Fourth Circuit Court of Appeals; *Aurora* is currently on appeal to the District Court.

of a petition in bankruptcy by Fair, in order to defeat this levy, can have no effect on this transfer. Accordingly, the Bankruptcy Court had no jurisdiction over the property and could not order that it be turned over to the debtor in possession. The judgment of the Bankruptcy Court is reversed. This case is remanded to the Bankruptcy Court for further proceedings consistent with this opinion and order.